| | |
|---|---|
| Attorney(s): | Jacqueline M. Vigilante, Esquire |
| Law Firm: | The Vigilante Law Firm, P.C. |
| Address: | 99 North Main |
| | Mullica Hill, NJ 08062 |
| Telephone No.: | (856) 223-9990 |
| Fax No.: | (856) 494-1400 |
| E-mail: | jacci@thevigilantelawfirm.com |
| Attorney(s) for Plaintiff(s): | Joseph DiBuonaventura |

**Joseph DiBuonaventura**

Plaintiff(s)

vs.

**Sean F. Dalton, Rafael Muniz, in their individual and official capacities**

Defendant(s)

SUPERIOR COURT OF NEW JERSEY

**Civil** DIVISION

**Gloucester** COUNTY

DOCKET NO. _L-285-17_

CIVIL ACTION

# Summons

From the State of New Jersey

To the Defendant(s) Named Above:

   The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey, and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $**175.00** and completed Case Information Statement) if you want the court to hear your defense.

   If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services Office in the county where you live or the Legal Services of New Jersey statewide toll free hotline at 1-888-LSNJ-LAW (576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: _____

/s/ Michelle Smith

*Superior Court Clerk*

Name of Defendant To Be Served: **Sean F. Dalton**

Address of Defendant To Be Served: **Gloucester County Prosecutor's Office, 70 Hunter Street, Woodbury, NJ 08096**

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A, CN 10792
Rev. 7/23/10   P8/10

Powered by  HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 1

# Directory of Superior Court Deputy Clerk Offices

Legal Services of New Jersey statewide toll free hotline 1-888-LSNJ-LAW (576-5529)

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Floor, Court Facility,
49 Rancocas Road
Mount Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
First Floor, Hall of Records
101 South Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 North Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Streets, P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Floor, Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Courthouse, First Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 263-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
71 Monument Park, P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Place, P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market Street, P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office, P.O. Box 3000
New Court House, Third Floor
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
First Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 387-1835
LEGAL SERVICES
(908) 475-2010

ns - Law or Chancery Divisions
Court - Appendix XII-A, CN 10792
/10   P8/10

Powered by

HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 2

**Appendix XII-B1**



| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1. Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed | PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| | CHG/CK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Jacqueline M. Vigilante, Esquire | (856) 223-9990 | Gloucester |
| FIRM NAME (if applicable) | | DOCKET NUMBER (when available) |
| The Vigilante Law Firm, P. C. | | L-285-17 |
| OFFICE ADDRESS | | DOCUMENT TYPE |
| 99 North Main Street | | Complaint |
| Mullica Hill, NJ 08062 | | |
| | | JURY DEMAND  ☒ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Joseph DiBuonaventura | Joseph DiBuonaventura v. Sean F. Dalton, Rafael Muniz, in their individual and official capacities |

| CASE TYPE NUMBER (See reverse side for listing) | HURRICANE SANDY RELATED? | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO |
|---|---|---|
| 005 | ☐ YES  ☒ NO | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? | IF YES, LIST DOCKET NUMBERS |
|---|---|
| ☒ YES  ☐ NO | |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) |
|---|---|
| ☐ YES  ☒ NO | ☐ NONE  ☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? | IF YES, IS THAT RELATIONSHIP: |
|---|---|
| ☒ YES  ☐ NO | ☒ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)  ☐ FAMILIAL  ☐ BUSINESS |

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☒ YES  ☐ NO |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

**RECEIVED & FILED**
**MAR - 3 2017**
SUPERIOR COURT OF NJ
GLO. COUNTY CIVIL PART

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| ☐ YES  ☒ NO | |
| WILL AN INTERPRETER BE NEEDED? | IF YES, FOR WHAT LANGUAGE? |
| ☐ YES  ☒ NO | |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: /s/

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM (coverage issues only)
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (summary action)
- 999  OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621  UM or UIM CLAIM (includes bodily injury)
- 699  TORT – OTHER

### Track III - 450 days' discovery
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 620  FALSE CLAIMS ACT
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
- 271  ACCUTANE/ISOTRETINOIN
- 274  RISPERDAL/SEROQUEL/ZYPREXA
- 281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282  FOSAMAX
- 285  STRYKER TRIDENT HIP IMPLANTS
- 286  LEVAQUIN
- 287  YAZ/YASMIN/OCELLA
- 289  REGLAN
- 290  POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291  PELVIC MESH/GYNECARE
- 292  PELVIC MESH/BARD
- 293  DEPUY ASR HIP IMPLANT LITIGATION
- 295  ALLODERM REGENERATIVE TISSUE MATRIX
- 296  STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
- 297  MIRENA CONTRACEPTIVE DEVICE
- 299  OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
- 300  TALC-BASED BODY POWDERS
- 601  ASBESTOS
- 623  PROPECIA

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category   ☐ Putative Class Action   ☐ Title 59

Jacqueline M. Vigilante
NJ Bar Id.030961988
Micole Sparacio
THE VIGILANTE LAW FIRM, PC
99 North Main Street
Mullica Hill, NJ 08062
856-223-9990
Attorneys for Plaintiff

RECEIVED & FILED
MAR - 3 2017
SUPERIOR COURT
GLO. COUNTY

| JOSEPH DIBUONAVENTURA<br>Plaintiff<br><br>v.<br><br>SEAN F. DALTON, RAFAEL MUNIZ, in their individual and official capacities,<br>Defendants. | Superior Court of New Jersey<br><br>Gloucester County, Law Division<br><br>Docket No: GLO-L - 285-17<br><br>Complaint and Jury Demand |
|---|---|

## COMPLAINT – JURY TRIAL DEMANDED

COMES NOW, JOSEPH DIBUONAVENTURA, Plaintiff herein and who hereby files this complaint for damages. This claim involves a pattern of conduct based on person motive and malicious intent over a period of time by the Defendants designed to violate Plaintiff's constitution and statutory rights. In support thereof Plaintiff avers as follows:

### I. JURISDICTION AND VENUE AND STATUTORY PREREQUISITES

1. This action is initiated pursuant to the New Jersey State Constitution and under the New Jersey Civil Rights Act §10:6-1 *et seq*. This Court may properly maintain personal jurisdiction over Defendants because the individual Defendants are citizens of the State of New Jersey.

2. Venue is properly laid in this County because Defendants are domiciled and/or regularly engage in business in the County of Gloucester and a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this County.

## II. PARTIES

3. Plaintiff, Joseph DiBuonaventura, is an adult individual residing in Atlantic County, State of New Jersey, and is subject to the jurisdiction of this Court.

4. Defendant, Rafael Muniz, is an adult individual residing in Gloucester County, State of New Jersey, who serves as Chief of Police of Washington Township Police Department and who is subject to the jurisdiction of this Court.

5. Defendant, Sean F. Dalton, is an adult individual residing in Gloucester County, State of New Jersey, who serves as the Gloucester County Prosecutor and Chief Law Enforcement Officer of Gloucester County and who is subject to the jurisdiction of this Court.

## III. FACTUAL BACKGROUND

### Facts related to the Parties

6. From 2004 through 2008, Paul Moriarty served as the Mayor of Washington Township.

7. In 2006 Paul Moriarty was elected to the New Jersey State Assembly for the 4th Legislative District in the State of New Jersey, which is a position he still holds.

8. In 1993 through 1997 Defendant Dalton served as an Assemblyman in the 4th Legislative District in the State of New Jersey.

9. In 2002, pursuant to N.J.S.A. 2A:158-1, Sean F. Dalton was appointed Gloucester County Prosecutor for a five year term and reappointed in 2007, to a second five-year term.

10. While not reappointed since the end of his term in 2012, pursuant to N.J.S.A. 2A:158-2, Sean F. Dalton remains in the position of Gloucester County Prosecutor.

2

11. The County Prosecutor has exclusive jurisdiction with the Attorney General over the criminal business of the state of New Jersey. N.J.S.A. 2A:158-4.

12. As Gloucester County Prosecutor, Defendant Dalton was the chief law enforcement officer of Gloucester County. N.J.S.A. Const. Art. 7, § 2, par. 1; N.J.S.A. 52:17B-112(b), 2A:158-4, 2A:158-5.

13. In that capacity, Defendant Dalton had broad supervisory authority over the operations of municipal police departments.

14. The Gloucester County Prosecutor's office is a law enforcement agency.

15. The Washington Township Police department is a law enforcement agency.

16. As the County's Chief Law Enforcement Officer, Dalton was responsible for Internal Affairs investigations in municipal police departments involving allegations of wrongdoing by high ranking municipal police officers and for internal affairs investigations where a conflict of interest prevent a municipal police department from investigating one of its own officers.

17. Pursuant to N.J.S.A. 40A:14-181, the Washington Township Police Department was a law enforcement agency at all times bound by the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety.

18. Pursuant to N.J.S.A. 40A:14-181, the Gloucester County Prosecutor's Office was a law enforcement agency at all times bound by guidelines governing the "Internal Affairs

Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety.

19. As the Chief of Police of Washington Township, Muniz was bound by guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety with regard to any internal affairs investigation in which he was involved.

20. As the Chief Law Enforcement Officer of Gloucester County, Dalton was bound by guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety with regard to any internal affairs investigation in which he was involved.

21. In 2006, as Mayor of Washington Township, Moriarty promoted Defendant Rafael Muniz, from the rank of Lieutenant to the rank of Chief of Police.

22. Defendant Muniz remained in the position of Chief of Police of Washington Township Police Department (WTPD) until December 31, 2016.

23. At all times relevant hereto, Plaintiff was employed by Washington Township as a Police Officer.

24. On June 5, 2012 Muniz alleged in a complaint to the GCPO that on that same date he became aware of an OPRA request seeking a copy of the police report involving his son and that the report could not be found at that time.

25. That offense had not been reported to the GCPO despite the fact that the incident involved an alleged offense and confession which required review by the GCPO.

26. Dalton authorized an investigation into the missing report and assigned that investigation to Lt. Langdon Sills, even though a copy was available to and at the WTPD.

27. Dalton did not initiate an investigation or prosecution of the alleged theft at that time.

28. On or before July 24, 2012, Defendant Dalton became aware that Plaintiff complained to the Washington Township Business Administrator that Muniz had engaged in unlawful conduct by failing to refer a criminal investigation involving his son to the Gloucester County Prosecutor's Office (GCPO).

29. Despite the complaint forwarded to the GCPO about Muniz misconduct, the GCPO failed to execute its law enforcement duties to initiate a prompt investigation.

30. On July 31, 2012, Plaintiff arrested former Mayor Paul Moriarty on violations of N.J.S.A. 39:4-50 and 39:405.4, commonly known as DUI and refusal.

31. On or about August 6, 2012, Plaintiff filed a separate complaint with the Gloucester County Prosecutor's Office alleging that Defendant Muniz engaged in official misconduct in failing to refer the theft involving his son to the GCPO for investigation or charges; failing to file charges against his son for jewelry thefts which occurred in Washington Township; engaging in possible witness intimidation and/or bribery; and failing to follow normal police procedures in investigating the jewelry thefts, where his son was identified by all witnesses as the suspect.

32. Following his arrest on DUI and refusal, Moriarty proceeded to flood the press with statements about his belief that the arresting officer, Plaintiff, was corrupt and that the arrest was motivated by ill will.

33. As a result of Moriarty's press campaign, Defendant Muniz recognized immediately that there would be an internal affairs investigation into the conduct of Plaintiff.

34. Defendant Muniz also recognized that he had a potential conflict of interest which precluded him and his department from conducting the Internal Affairs investigation because former Mayor Moriarty had recommended his appointment to the position of Chief in 2006 and that such involvement may lead to the "justifiable impression to the public" that there is an appearance of a conflict. See Exhibit A.

35. Defendant Muniz submitted the letter marked as Exhibit A to Defendant Dalton on August 13, 2012 and requested that the GCPO assume the investigation.

36. Despite immediately acknowledging the conflict of interest and communicating that conflict verbally to Dalton, Muniz took and ordered a series of actions to investigate the alleged misconduct between July 31, 2012 and August 14, 2012 when the letter was finally submitted to the GCPO, which included:

   a. retrieving available video data from Plaintiff's patrol vehicle mobile video recorder (MVR);

   b. authorizing Lieutenant Rolando to seek to obtain additional metadata from the MVR which was not readily available and which had not been obtained in any other DUI or refusal investigation by the WTPD;

6

  c. retrieving additional metadata for use against Plaintiff;

  d. permitting Paul Moriarty to access the WTPD through the police entrance to meet with Lt Rolando for the purpose of reading a statement into the record as a complaint instead of participating an interview as required under the NJ Attorney General guidelines on Internal Affairs;

  e. authorizing Lt. Rolando to refrain from asking Moriarty any questions about his complaint;

  f. instructing Plaintiff to cease all activity in connection with his ongoing investigation of Moriarty's DUI and refusal; and

  g. failing to order other involved sworn law enforcement to issue reports.

37. After gathering up evidence which was designed to assist Moriarty in his complaint against Plaintiff, Muniz forwarded the letter to Dalton requesting that the GCPO assume responsibility for the investigation.

38. Upon receipt of the correspondence marked Exhibit A, Dalton communicated with the NJ Attorney General for guidance on handling the request.

39. The NJ Attorney General advised the GCPO that the GCPO should handle the internal affairs investigation and cautioned that the IA investigation should not proceed prior to the adjudication of the DUI and refusal trial in the matter of State v. Moriarty.

40. As a result of that communication, on September 5, 2012, Dalton informed Muniz that the GCPO would handle the internal affairs investigation involving Moriarty's complaint.

41.     Despite the cautionary instruction and guidance of the AG's office, Dalton did not stay the internal affairs investigation pending the outcome of the DUI and refusal trial.

42.     Dalton assigned the internal affairs investigation to County Detective Robert Hemphill with no instructions to stay the investigation pending the outcome of the DUI and refusal trial.

43.     Instead of staying the IA investigation, per the AG's instruction, Hemphill began the IA investigation on September 6, 2012.

44.     On September 26, 2012, on behalf of the GCPO Hemphill issued a Notice of Internal Affairs Investigation to Plaintiff.

45.     On October 16, 2012, Moriarty was permitted once again by Muniz to enter the WTPD through its police only entrance where he met privately with Defendants Muniz and Lt. Rolando.

46.     On or about that same date, Defendant Dalton clear Muniz in the wrongful manner in which the burglary charge was handled, even though he initiated a criminal prosecution against Muniz's son at that same time.

47.     Despite the fact that Moriarty was a criminal defendant in the DUI and refusal case and Muniz had a clear conflict of interest in the IA matter, Moriarty met twice on that day for an extended period of time with Rolando, Muniz and court personnel.

48.     These meetings were designed to assist Moriarty in drafting and filing criminal charges against Plaintiff.

49. Following the meetings, Moriarty emerged with a criminal complaint containing twenty seven criminal charges directed at Plaintiff, which Moriarty promptly filed with the Municipal Court in Washington Township.

50. The criminal complaints once filed were sent to GCPO Chief of Detectives John Porter by Muniz's secretary on October 17, 2012, who promptly advised Defendant Dalton of the summary of the charges against Plaintiff.

51. As the Chief law Enforcement Officer of Gloucester County, Dalton had the authority and obligation to:

   a. stay the internal affairs investigation;

   b. stay the criminal investigation; and

   c. proceed with the prosecution of the DUI and refusal charges in an adversarial setting prior to pursuing the IA and the criminal charges, which were both initiated by Moriarty.

52. Instead, and as a result of the criminal charges Muniz assisted Moriarty in filing against Plaintiff, Dalton instructed Hemphill to convert the IA investigation into a criminal investigation.

53. As a result of the criminal charges, Plaintiff was suspended without pay.

54. On May 1, 2013 Plaintiff was indicted on criminal charges filed by Moriarty and a criminal action was instituted against Plaintiff.

55. After charging the Plaintiff, the Gloucester County Prosecutor moved improperly and successfully to dismiss all charges against Moriarty.

56. From January 2015 through March 3, 2015, Plaintiff was tried and acquitted of all criminal charges.

57. As the Chief Law Enforcement Officer responsible for the internal affairs investigation, Dalton had an obligation duty and responsibility to conduct a fair and impartial internal affairs investigation, to issue findings on the internal affairs investigation and determine whether there would be any administrative charges against the officer following the acquittal.

58. Following the acquittal, Defendant Muniz contacted Dalton through a private email server instead of his authorized Township email account and requested permission to move forward with the internal affairs investigation, from which he had already been removed as a result of a conflict of interest. See Exhibit B.

59. In direct contravention of the instructions and guidelines issued and published the Attorney General and in violation of his own duties and responsibilities, on March 6, 2015, Dalton permitted Muniz to proceed with the departmental internal affairs investigation, which lead to administrative charges against Plaintiff by Muniz.

60. Defendant Dalton permitted Defendant Muniz to proceed with the internal affairs investigation in direct contravention of the Attorney General's instruction and guideline that all such investigations shall be objectively investigated by a fair and impartial investigator, despite his actual knowledge that Muniz and his department had a conflict of interest that resulted in their removal from the investigation at its very inception.

61. Defendant Muniz proceeded with his internal affairs investigation in direct contravention of Attorney General's instruction and guideline that all such investigations

10

shall be objectively investigated by a fair and impartial investigator and after his admitted conflict of interest in conducting the investigation.

62. In addition to the self-admitted conflict of interest Muniz identified in his August 13, 2012 letter, Muniz had a conflict of interest stemming from Plaintiff's complaint that he purposely mishandled the investigation involving his son, which resulted in criminal charges against his son.

63. Defendant Dalton was well aware of the significant conflicts of interest which should have precluded the Washington Township Police Department Defendant Muniz from any involvement with the internal affairs investigation of the Moriarty Complaints.

64. Despite that knowledge, and in direct violation of Plaintiff's rights to a fair, impartial and objective internal affairs investigation, Dalton violated his duties and responsibilities as the chief law enforcement officer of Gloucester County to plaintiff's severe personal detriment.

65. AS a result of the unfair, targeted, vindictive and unlawful internal affairs process initiated and prosecuted by Muniz, Plaintiff was terminated from his employment by Muniz on the basis of the administrative charges filed by Muniz and permitted by Dalton.

### COUNT I
### VIOLATION OF PLAINTIFF'S RIGHTS AGAINST DEFENDANTS IN THIER INDIVIDUAL and OFFICIAL CAPACITIES UNDER THE NEW JERSEY STATE CONSTITUTION AND PURSUANT TO THE NEW JERSEY CIVIL RIGHTS ACT

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. At all times defendants were acting under color of law.

68. Defendants conduct was intended to interfere with Plaintiff's substantive due process, equal protection, privileges and immunities secured to him under the Constitution of the State of New Jersey.

69. Defendants' conduct subjected plaintiff to the deprivation of substantive due process, equal protection, privileges and immunities secured to him under the Constitution of the State of New Jersey.

70. There is no rational or legitimate basis for Muniz's request to move forward with a departmental internal affairs investigation and for Dalton's acquiescence and permission to do so.

71. Defendants' conduct denied Plaintiffs' right to a fair and impartial investigation of the internal affairs complaint.

72. Defendants' conduct which led to the termination of Plaintiff's employment was motivated by ill will, maliciousness and unlawful purpose

73. As a result of Defendants' actions, Plaintiff has suffered pecuniary losses, and emotional pain and suffering, as set forth herein.

74. Defendants' as complained of above were willful, wanton, malicious, and/or were made in reckless disregard of Plaintiff's civil rights and Plaintiff is entitled to receive an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment in his favor:

    (a) Awarding him compensatory damages;

    (b) Awarding him punitive damages;

    (c) Awarding him attorneys' fees and costs of this action: and

(d) Granting other such relief as the Court deems necessary and appropriate.

PLEASE TAKE NOTICE that demand is hereby made by the Plaintiff for a Trial by Jury as to all issues of this cause of action.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that pursuant to Rule 4:25-4, *Jacqueline M. Vigilante, Esquire*, is hereby designated as trial counsel in the above-captioned matter on behalf of Plaintiff.

## CERTIFICATION

I certify that the matter in controversy in this action is not the subject of any other action pending in any other court or of a pending arbitration proceeding and no other action or arbitration proceeding is contemplated. I further certify that I am unaware of any other persons who should be named as parties in this action.

Dated: March 3, 2017            By: _____
                                    Jacqueline M. Vigilante, Esquire

 

# WASHINGTON TOWNSHIP POLICE
1 McClure Drive • Sewell, NJ 08080 • (856) 589-6650

Chief
Rafael H. Muniz

August 13, 2012

Mr. Sean F. Dalton, County Prosecutor
Gloucester County Administration Building
2 South Broad Street, PO Box 337
Woodbury, NJ 08096

    I serve as the Chief of the Washington Township Police Department. On August 11, 2012, Assemblyman Paul Moriarty filed a formal Internal Affairs Complaint against Washington Township Police Officer Joseph DiBuonaventura, making allegations which could involve potential criminal conduct on the part of the Officer.

    Pursuant to New Jersey Attorney General Internal Policy & Procedures, specifically Page 23, the County Prosecutor's Office "must be immediately notified of all allegations of criminal conduct. The internal affairs investigator shall refrain from taking any further investigative action until directed to do so by the county prosecutor."

    Furthermore, the New Jersey Attorney General Internal Policy & Procedures require that the Prosecutor's Office "endeavor to review the allegation within thirty days and advise the law enforcement agency whether a criminal investigation will be conducted."

    Moreover, I believe that there is a potential conflict of interest which precludes the Washington Township Police Department from conducting this Internal Affairs Investigation. Assemblyman Moriarty served as Mayor of Washington Township from 2004 to 2008. In June of 2006, then-Mayor Moriarty recommended my appointment as Chief of Police, which was approved by Washington Township Council. This involvement in my appointment by Assemblyman Moriarty may lead to a justifiable impression to the public there is an appearance of a conflict.

    For these reasons, I am forwarding the Internal Affairs Complaint to your attention and respectfully request that your Office conduct the investigation as you deem appropriate. If you have any questions or require further information, please do not hesitate to contact me.

Respectfully,

Rafael H. Muniz
Chief of Police

Ex. A

DiBuonaventura-Plaintiff's Documents 001544
Produced by VLF

| | |
|---|---|
| From: | Rafael Muniz |
| To: | Guy P. Ryan |
| Cc: | Patrick Madden |
| Subject: | Fwd: Joseph dibonaventura |
| Date: | Monday, April 20, 2015 1:55:38 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** "Dalton, Sean" <sdalton@co.gloucester.nj.us>
> **Date:** March 6, 2015 at 6:55:55 PM EST
> **To:** Rafael Muniz <███@icloud.com>
> **Subject: Re: Joseph dibonaventura**
>
> Chief Muniz,
> We have completed our criminal investigation/prosecution. We will forward a copy of our criminal investigatory file to your attention. You can proceed with your departmental investigation.
> Thank you,
> Sean Dalton
> Sent from my iPhone
>
>> On Mar 6, 2015, at 4:41 PM, Rafael Muniz <███@icloud.com> wrote:
>>
>> Prosecutor Sean Dalton,
>>
>> Since the criminal matter on Joseph Dibonaventura has been adjudicated. I would like to move forward on an Internal Investigation. I am inquiring if your office has completed it's investigation and can we move forward on our Departmental investigation.
>>
>> Thank you
>>
>> Chief of Police Rafael H Muniz
>>
>> # 1 McClure Drive, Sewell, N.J. 08080
>>
>> Work 856-589-6664
>>
>> Fax   856-256-8806
>>
>> Chiefrmuniz@pd.twp.washington.nj.us



WT000001