THE VIGILANTE LAW FIRM, P.C.
By: Jacqueline M. Vigilante, Esquire
Attorney I.D. No. 030961988
99 North Main Street
Mullica Hill, NJ 08062
856-223-9990
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH DIBUONAVENTURA, | : | |
| | : | |
| Plaintiff, | : | NO. 1:17-cv-5120 (JHR) |
| v. | : | |
| | : | |
| SEAN F. DALTON and RAFAEL | : | *Civil Action* |
| MUNIZ, in their individual and | : | |
| official capacities, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF JOSEPH DIBUONAVENTURA'S BRIEF IN**

**OPPOSITION TO DEFENDANT RAFAEL MUNIZ'S MOTION TO DISMISS**

THE VIGILANTE LAW FIRM, P.C.
*Attorneys for Plaintiff,*
*Joseph DiBuonaventura*

By: /s/ Jacqueline M. Vigilante
Jacqueline M. Vigilante, Esquire
Attorney I.D. #030961988
99 North Main Street
Mullica Hill, NJ 08062
856-223-9990
jacci@thevigilantelawfirm.com

Date:  December 3, 2018

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . ii

   Cases . . . . . . . . . . . . . . . . . . . . . . . ii

   Statutes . . . . . . . . . . . . . . . . . . . . . . iii

   Rules . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION AND PROCEDURAL HISTORY . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 2

FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . 3

LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . 9

 I.   Motion to Dismiss Standard . . . . . . . . . . . . 9

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . 10

I.    Plaintiff's Second Amended Civil Rights Complaint Is
Not Barred by New Jersey Entire Controversy Doctrine
                                     10

II.   Plaintiff's First Amendment Right To Be Free From
Political Retaliation Claim (Count II)Should Not Be
Dismissed . . . . . . . . . . . . . . . . . . . . 14

III.  Plaintiff's Procedural Due Process Claim Should Not
Be Dismissed As He Was Denied Procedural Due Process
Protections (Count IV). . . . . . . . . . . . . . . 17

IV.   Plalintiff's Equal Protection Claim (Count V) Should
Not Be Dismissed . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

**Cases**

Allstate New Jersey Ins. Co. v. Cherry Hill Pain and Rehab
Institute, 389 N.J. Super. 130 (App. Div. 2006), certif.
denied, 190 N.J. 254 (2007) . . . . . . . . . . . . . . . 14

Alvin v. Suzuki, 227 F.3d 107(3d Cir. 2000) . . . . . . . . 12

Anderson v. Liberty Lobby, 477 U.S. 242 (1986) . . . . . . 8

Ashcroft v. Iqbal, 556 U.S. 662 (2009) . . . . . . . . . . 9

Barnett v. Penn Hills School District, 705 F. App'x 71(3d
Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . 17

Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987) . . . . . . . 15

Board of Trustees of University of Alabama V. Garrett, 531
U.S. 356 (2001) . . . . . . . . . . . . . . . . . . . . 24

Borrell v. Bloomsburg Univ., 955 F.Supp.2d 390 (M.D. Pa.
2013) . . . . . . . . . . . . . . . . . . . . . . . . . 23

Enquist v. Oregon Dept. of Agriculture, 553 U.S. 591(2008). 22

Fields v. Thompson Printing Co., Inc., 363 F.3d 259 (3d
Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 11

Fioriglio v. City of A. City, 963 F. Supp. 415(D.N.J.1997). 11

Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265(3d ir.2007). 14

Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J.
Super. 229 (App. Div. 2002) . . . . . . . . . . . . . . 13

Kelly v. Borough of Sayerville, N.J., 107 F.3d 1073 (3d
Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 17

Malleus v. George, 641 F.3d 560 (3d Cir. 2011) . . . . . . 10

MZL Capital Holdings, Inc. v. TD Bank, N.A., 2016 WL
4163827 (D.N.J. August 5, 2016) . . . . . . . . . . . . 9

Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310
(1995) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380
(3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 10

Paramount Aviation Corp. v. Agusta, 178 F.3d 132 (3d Cir.
1999) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Petrocelli v. Daniel Woodhead Co., 993 F.2d 27(3d Cir.1993) 12

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir.
2008) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Robb v. City of Philadelphia, 733 F.2d 286 (3d Cir. 1984) . 18

Rycoline Prod. Inc. v. C & W Unlimited, 109 F.3d 883 (3d
Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 11

Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d
183, 203 (3d Cir. 2008) . . . . . . . . . . . . . . . . 23

Simmermon v. Gabbianelli, 932 F.Supp.2d 626 (D.N.J. 2013) . 23

Tomino v, City of Bethlehem, 2010 WL 1348536 (E.D.Pa. Mar.
31, 2010) . . . . . . . . . . . . . . . . . . . . . . . 24

Tucker Industrial Liquid Coatings, Inc. v. Borough of East
Berlin, 85 F.Supp.3d 803 (M.D.Pa.2015) . . . . . . . . . 23

Vison Mortgage Corp. v. Chiapperini Inc., 156 N.J. 580
(1999) . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

42 U.S.C §1983 . . . . . . . . . . . . . . . . . . . . . . 18

<u>N.J.S.A.</u> Const., Art.7 §2, par. 1 . . . . . . . . . . . 4

<u>N.J.S.A.</u> 2A:158-4, 5 . . . . . . . . . . . . . . . . . 4

<u>N.J.S.A.</u> 40A:14-147 . . . . . . . . . . . . . . . . . 9

<u>N.J.S.A.</u> 40A:14-181 . . . . . . . . . . . . . . . . . 4

<u>N.J.S.A.</u> 52:17B-112(b). . . . . . . . . . . . . . . . 4

**Rules**

Fed.R.Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . 1

Fed.R.Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . 1

Local Rule 56.1 . . . . . . . . . . . . . . . . . . . . . 3

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Joseph DiBuonaventura, by and through his undersigned counsel, opposes this Motion to Dismiss filed by Defendant Rafael Muniz (hereafter, "Defendant Muniz").

On March 3, 2017, Plaintiff filed a Complaint in the Superior Court of New Jersey alleging Defendants violated rights protected by the New Jersey Constitution. Plaintiff's Complaint was amended to include claims for violations of federally-protected rights including substantive and procedural due process, First Amended political retaliation, First Amendment freedom of speech, and equal protection. Defendant Muniz removed the matter to federal court and filed a prior Motion for Summary Judgment and to Dismiss, which was later joined by Defendant Sean F. Dalton (hereafter, "Defendant Dalton").

On November 6, 2017, in response to the pending Motions, Plaintiff filed a Second Amended Complaint. Following a conference with the Court, Defendants were granted leave to file the Motions to Dismiss and Motions for Summary Judgment. Thereafter, on January 5, 2018, Defendant Muniz filed a Motion to Dismiss Plaintiff's Second Amended Complaint under Fed. R. Civ. Pro. 12(b)(6) and Fed. R. Civ. Pro 56(a). (ECF Doc. 35) On the same date, Defendant Dalton followed suit and filed a Motion to Dismiss Counts II, IV and V, and in the alternative for Summary Judgment as to Count V. (ECF Doc. 36) On February 19, 2018, Plaintiff timely filed a brief in

1

opposition to the Motion filed by Defendant Muniz. (ECF Doc. 44). A Brief in Opposition to the Motion filed by Defendant Dalton was filed on February 20, 2018. (ECF Doc. 45). Prior to oral argument on the motions, and after consideration of the parties' request to supplement the pending motions, on September 18, 2018, the Court entered an Order dismissing the pending motions without prejudice and granting leave to the movants to file amended dispositive motions on the issues of entire controversy, res judicata and collateral estoppel.

On October 23, 2018, Defendant Muniz filed a Motion to Dismiss Pursuant to Fed. R.Civ. Pro. 12(b)(6), seeking dismissal of Plaintiff's claims on the basis of the entire controversy doctrine, as well as on the basis of the arguments raised in the prior motion. (ECF Doc. 54). On November 9, 2018, Defendant Dalton filed a renewed Motion to Dismiss Counts II, IV and V, and in the alternative for Summary Judgment as to Count V, on the same basis as asserted in his prior motion.

The instant Motion filed by Defendant Muniz seeks dismissal under the Entire Controversy Doctrine and, in the alternative dismissal under Fed. Rule Civ. P. 12(b)(6) on Counts II, IV and V. For the reasons stated below, Defendant's Motion should be denied.

### STATEMENT OF FACTS

The Plaintiff relies upon the statement of facts as alleged specifically in the Second Amended Complaint. The facts set forth

2

in Plaintiff's Second Amended Complaint are incorporated herein by reference. As required under Local Rule 56.1, Plaintiff's Response and Counterstatement of Material Facts have been submitted as a separate document and are incorporated herein by reference.

### FACTUAL SUMMARY

By way of background, in 2012, Plaintiff acting in his capacity as a law enforcement officer in Washington Township stopped and arrested Paul Moriarty (hereafter, "Moriarty") for driving under the influence and refusal. Moriarty was a former Mayor of Washington Township who appointed Defendant Muniz to the position of Police Chief in 2006 while Mayor. Muniz was the Police Chief in 2012 when Moriarty was arrested.

At all times relevant hereto, Defendant Dalton was a State Prosecutor and the Prosecutor for Gloucester County. In addition to and separate and apart from his duties as County Prosecutor, Defendant Dalton was responsible for administrative tasks and personnel matters and decisions for employees under his supervision, control and authority. In this capacity, Defendant Dalton had supervisory authority over the operations of municipal police departments within Gloucester County in connection with internal affairs investigations and personnel matters.

Immediately after Moriarty's arrest for DUI and refusal, Moriarty made public complaints that Plaintiff was essentially a 'rogue cop' who had it in for him. As a result of Moriarty's

3

complaints, Defendant Muniz initiated an Internal Affairs investigation against Plaintiff. Because Defendant Muniz recognized his relationship with Moriarty could give rise to an appearance of a conflict of interest, Muniz submitted a request to Defendant Dalton to take over the Internal Affairs investigation. Plaintiff's Counterstatement of Material Facts, ¶4.

As the County's Chief Law Enforcement Officer, Defendant Dalton was responsible for Internal Affairs investigations in municipal police departments where a conflict of interest prevented a municipal police department from investigating one of its own officers. Dalton submitted Defendant Muniz's request to the New Jersey Attorney General's office, which confirmed the Internal Affairs investigation should be handled by the Gloucester County Prosecutor and not the municipal police department. The Internal Affairs investigation was to be stayed while the underlying charges against Moriarty were tried according to the Attorney General. N.J.S.A. Const. Art.7 §2 par. 1, N.J.S.A. 52:17B-112(b), N.J.S.A. 2A:158-4, 5.

Pursuant to N.J.S.A. 40A:14-181, at all times relevant hereto the Washington Township Police Department (hereafter, "WTPD") was a law enforcement agency required to have adopted as part of its Rules and Regulations the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal

4

Justice in the New Jersey Department of Law and Public Safety. The Rules and Regulations of the Washington Township Police Department were declared void and vacated *as they existed prior to their amendment on May 24, 2015* for failure to have been adopted by the appropriate authority. Defendant Muniz's Exhibit 11. As a result, at the time of the Internal Affairs investigation and administrative charges against Plaintiff in the Moriarty and another warnings case, the WTPD failed to have procedural protections and failed to have adopted the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety as required by statute <u>N.J.S.A</u>. 40A:14-181.

Pursuant to <u>N.J.S.A</u>. 40A:14-181, Defendant Dalton was the person responsible for the administrative internal affairs investigation and was bound by guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety with regard to any internal affairs investigation in which he was involved.

As the Chief of Police of Washington Township, Defendant Muniz was bound by guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department

5

of Law and Public Safety with regard to any internal affairs investigation in which he was involved.

As the Chief Law Enforcement Officer of Gloucester County assigned to handle the administrative internal investigation and employee discipline, Defendant Dalton was required to:

a.    stay the internal affairs investigation;

b.    stay the criminal investigation; and

c.    proceed with the prosecution of the DUI and refusal charges in an adversarial setting prior to pursuing the Internal Affairs and criminal charges, which were both initiated by Moriarty. Exhibit E.

Instead, and as a result of collusion among Defendants Dalton and Muniz, Defendant Dalton converted the Internal Affairs investigation into a criminal investigation upon multiple private criminal complaints filed by Paul Moriarty and the assistance of Washington Township against Plaintiff, which resulted in an order suspending Plaintiff without pay in November 2012. ¶¶79-80.

On May 1, 2013, Defendant Dalton sought and obtained an indictment on the criminal charges filed by Moriarty, and a criminal action was instituted against Plaintiff. After indicting Plaintiff, Defendant Dalton moved improperly and successfully to dismiss all charges against Moriarty. In so doing, Defendant Dalton completely, arbitrarily and intentionally failed to follow the

instruction of the Attorney General in handling the administrative investigation. ¶¶81-83.

On March 3, 2015, Plaintiff was acquitted of all criminal charges. Following the acquittal Defendant Muniz contacted Defendant Dalton through a private email server, not his authorized WTPD email account, requesting permission to move forward with the Internal Affairs investigation. The same investigation from which Defendant Muniz had already been removed as a result of his conflict of interest. Defendant Dalton readily granted that request.  Plaintiff's Counterstatement of Material Fact, ¶6. Although a police department may proceed with administrative charges following the disposition of criminal charges against a police officer pursuant to the Attorney General Guidelines on police officer administrative internal affairs investigations and police discipline as adopted under <u>N.J.S.A</u>. 40A:14-181, the WTPD was conflicted from doing so.

Defendant Dalton was the person responsible for the Internal Affairs investigation and any resulting administrative charges. Dalton was aware of his obligation, duty and responsibility to conduct a fair and impartial Internal Affairs investigation, to issue findings on the investigation and determine whether there would be any administrative charges against the officer following the acquittal.  However, Defendant Dalton abrogated that duty. *Id*.

7

Defendant Dalton unlawfully authorized Defendant Muniz to proceed with the Internal Affairs investigation, in direct contravention of the Attorney General's instruction and guideline that all such investigations shall be objectively investigated by a fair and impartial investigator *and* with actual knowledge that Defendant Muniz and his department had a conflict of interest that resulted in their removal from the investigation at its very inception.

Following Defendant Muniz's Internal Affairs investigation, Plaintiff was charged and found guilty of misconduct in connection with his arrest of Paul Moriarty. Plaintiff appealed the decision of the administrative hearing officer to the Superior Court Law Division, which affirmed the termination of Plaintiff's employment on the basis of misconduct.  That decision was the basis of the Court's decision to grant summary judgment on the CEPA suit in state court. The Court in that matter determined that the judicial determination of Plaintiff's misconduct precluded his claims that he was terminated due to his protected activity.

Due to the political affiliation between Defendant Muniz, Paul Moriarty and Defendant Dalton, Dalton arbitrarily and intentionally favored Moriarty in connection with the charges against him, which resulted in the dismissal of the DUI and refusal charges, and Dalton treated Plaintiff unfavorably in connection with the scheme described above, the Moriarty Internal Affairs

investigation, and criminal charges and in failing to stay the investigation pending the adjudication of the criminal charges. ¶¶92-104.

Plaintiff was denied his right to an impartial and fair investigation. N.J.S.A. 40A:14-181. Plaintiff was denied his right not to be removed from his employment for political reasons. N.J.S.A. 40A:14-147.

**LEGAL STANDARD**

**I.   MOTION TO DISMISS STANDARD**

In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must determine that the complaint contains sufficient factual matter, which if accepted as true, states "a claim to relief that is plausible on its face." *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 2016 WL 4163827, at *3 (D.N.J. August 5, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 663. To determine the sufficiency of the plaintiff's complaint, the court should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.

9

Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *MZL Capital Holdings, Inc.,* 2016 WL 4163827, at *3-4 (quoting *Malleus v. George*, 641 F.3d 560, 653 (3d Cir. 2011)).

The court is required to "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" may be taken into consideration. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994).

As discussed in more detail below, Plaintiff has set forth facts which establish a plausible claim on all counts before this court.  Defendant's Motion should be denied.

**LEGAL ARGUMENT**

**I.   PLAINTIFF'S SECOND AMENDED CIVIL RIGHTS COMPLAINT IS NOT BARRED BY THE NEW JERSEY ENTIRE CONTROVERSY DOCTRINE.**

Defendant Muniz argues that this Court must dismiss Plaintiff's complaint against him on the basis of the New Jersey Entire Controversy Doctrine. N.J. Civ. P. 4:30A provides that non--joinder of claims or parties required to be joined by

10

the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine. The doctrine requires that a party must assert all affirmative claims he has against another party including counterclaims and cross-claims. See *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 265 (3d Cir. 2004). The goals of the entire controversy doctrine are said to be: "(1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and fairness by avoiding fragmented multiple and duplicative litigation." *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 N.J. 310, 322 (1995) (citations omitted).

Because the entire controversy doctrine provides the equitable remedy of preclusion, it is not applied where "joinder would result in significant unfairness to the litigants or jeopardy to a clear presentation of the issues and a just result," *Mystic Isle,* 142 N.J. at 323; see also *Fioriglio v. City of A. City*, 963 F. Supp. 415, 420-21 (D.N.J. 1997). As Defendant aptly recognized in its brief the Third Circuit has recognized that the doctrine is a New Jersey specific and idiosyncratic application of the concept of res judicata. Deft. Brief at 17. *Rycoline Prod. Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

A keynote of the entire controversy doctrine is that it does not require all claims to be brought in the same piece of litigation, but rather be joined together before the same court, and that court can determine the best way in which to proceed. *Petrocelli v. Daniel Woodhead Co.,* 993 F.2d 27, 31 (3d Cir.1993)

"[P]reclusion is a remedy of last resort. . . 'Courts must carefully analyze' both fairness to the parties and fairness to the system of judicial administration 'before dismissing claims.'" *Vison Mortgage Corp. v. Patricia J. Chiapperini Inc.,* 156 N.J. 580, 584 (1999). In applying this drastic remedy this Court must look to the procedural history of this case. Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Gloucester County on March 3,2017 under Docket Number GLO-L-285-17. Deft's Statement of Fact 4. Plaintiff thereafter amended his complaint in that same court on Jun 15, 2017. Deft's Statement of Fact 5. As a result, it is beyond dispute that Plaintiff complied with the Entire Controversy Doctrine by filing his complaint before the same court in which his CEPA case was pending in full compliance with the doctrine. In fact, Plaintiff filed his Civil Rights Complaint with the required cover sheets, reporting to the Court that there was a related matter with docket number GLO-L-1435-13, the CEPA case. See Deft's Exhibit 2. In so doing Plaintiff did not violate the doctrine and in fact complied with it. On July 13, 2017, Defendants elected to remove Plaintiff's complaint

12

from the New Jersey Superior Court to the New Jersey District
Court. Defendants now argue that Plaintiff's filing violated the
Entire Controversy Doctrine and that Plaintiff's claim should be
dismissed. This argument is commonly known as having your cake and
eating it too.

Because preclusion is an equitable doctrine, a court must
weigh the equities and use its discretion based on the particular
circumstances of each case. *Paramount Aviation Corp. v. Agusta*,
178 F.3d 132, 137 (3d Cir. 1999). In this case, the plaintiff did
not choose to file this claim in a separate court, but rather was
removed to the District Court by defendants' action.  Permitting
defendants to avail themselves of the equitable remedy of
preclusion under these circumstances would permit defendant to
take manipulate the procedural rules of removal to take advantage
of the entire controversy doctrine.   A court must remember that
the Doctrine "is not intended to be a trap for the unwary." *Hobart
Bros. Co.,* 354 N.J. Super. at 241 (App. Div. 2002). This Honorable
Court should exercise its discretion against preclusion and send
a clear message that it will not countenance such gamesmanship.

To the extent this court reaches the merits of Defendant's
argument on the entire controversy doctrine, a subsequent claim
may be barred by the entire controversy doctrine "only when a prior
action based on the same transactional facts has been tried to

13

judgment or settled." *Allstate New Jersey Ins. Co. v. Cherry Hill Pain and Rehab Institute*, 389 N.J. Super. 130, 140 (App. Div. 2006), certif. denied, 190 N.J. 254 (2007). Additionally, the court must determine "whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim." *Hobart Bros. Co.,* 354 N.J. Super. at 241. As set forth in each of the decisions upon which Defendant relies, the issue decided below is whether the Plaintiff was required to be terminated due to misconduct in the arrest of Moriarty and whether Plaintiff's whistleblower claims extinguished as a result of the decision of Judge Morgan affirming the termination. Deft's Exhibit 10 and 13. The issue of collusion between Dalton and Muniz was not a part of either of those decisions and was not litigated in that forum. Plaintiff was prevented from litigating these claims in that forum because of the Defendants' removal to federal court.

## II.   PLAINTIFF'S FIRST AMENDMENT RIGHT TO BE FREE FROM POLITICAL RETALIATION CLAIM (COUNT II) SHOULD NOT BE DISMISSED.

Defendant Muniz argues Plaintiff's political retaliation claim must be dismissed for failure to allege plausible facts to set forth such a claim. Defendant correctly cites to *Galli v. N.J. Meadowlands Comm*'n 490 F.3d 265, 271 (3d Cir. 2007) for the elements of a cause of action for political retaliation.

14

Significantly, the Court in *Galli* recognized that government employees who lack a political affiliation, or who are politically independent, are protected from retaliation under the First Amendment as much as an employee who espouses to a particular political party, such as the plaintiff here. *Id.*

The question before this court in this motion is whether well-pleaded facts in the complaint plausibly give rise to a claim upon which relief can be granted. As such, the court must examine the facts in the complaint and the cause of action.

The first element, that Plaintiff was employed at a public agency that does not require political affiliation, is not contested by Defendant in its motion. *See* Defendant Muniz's Brief at 22.

The second element is that Plaintiff engaged in conduct protected by the First Amendment. The factual allegations in the complaint establish that Plaintiff arrested a well-known powerful politician who was connected to his employer as its former Mayor. As the Court stated in *Galli*, "the right not to have allegiance to [an] official or party in power is itself protected under the First Amendment." *Id.* at 272. In fact, the Third Circuit has rejected the suggestion that Plaintiff's "associations necessarily had to be political" to be protected. *Bennis v. Gable,* 823 F.2d 723, 727 n. 4 (3d Cir. 1987).

15

The First Amendment conduct at issue in Count II is Plaintiff's political independence from Moriarty and the political machine. Taking the facts in the light most favorable to Plaintiff, the facts pled by Plaintiff establish that Plaintiff remained politically independent of the former Mayor (unlike Muniz, who by his own statement was concerned that his past political relationship with Moriarty could give rise to an appearance of a conflict of interest) was the basis of all of the following retaliation. The facts in the Complaint, when taken as whole, plausibly set forth a claim that the independence from political pressure Plaintiff exhibited was met with a concerted effort put forth by a political machine to vindicate the powerful politician and to cause harm to Plaintiff.  These facts include the ongoing investigation, even after the Attorney General instructed otherwise, the assistance provided to Moriarty to file numerous criminal complaints against Plaintiff, the indictment of Plaintiff which was followed shortly thereafter by Dalton's move to dismiss the DUI and refusal charges against Moriarty. Deft's Exhibit 6.

The third element that the Court must determine is plausibly set forth in Plaintiff's complaint is that the protected conduct was a substantial or motivating factor for the adverse employment action. *Galli*, 490 F.3d at 271. Citing *Galli*, Defendant argues that in order to meet this third prong, Plaintiff must show both that Defendants knew of his political persuasion <u>and</u> that Defendant

16

knew he failed to show public support for the official. *Galli* does not require this two-fold burden to establish the third prong. On the contrary, *Galli* requires evidence of knowledge (either directly or through proof that the defendant knew the plaintiff did not show public support) and of causation. *Id*. At 275. As the Court in *Galli* recognized, the plaintiff did not have to disclose her political beliefs to her employer, rather the inquiry is whether the employer was aware of the plaintiff's failure to show support for the official. *Id*. The focus of this court's inquiry should be whether the well-pleaded facts plausibly set forth a claim that Defendants were aware that Plaintiff did not support Moriarty.

Accordingly, Plaintiff's First Amendment right to be free from political retaliation claim should not be dismissed.

### III. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM SHOULD NOT BE DISMISSED AS HE WAS DENIED PROCEDURAL DUE PROCESS PROTECTIONS (COUNT IV).

Defendant argues that Plaintiff's procedural due process claim should be dismissed and in support of this argument, Defendant relies primarily on the Third's Circuit's analysis in *Barnett v. Penn Hills School District*, 705 F. App'x 71 (3d Cir. 2017).

Plaintiff's state law property interest in his employment entitles him to procedural due process. *Kelly v. Borough of*

*Sayerville, N.J.,* 107 F.3d 1073 (3d Cir. 1997).  The Fourteenth Amendment of the Constitution prohibits deprivations persons of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV, Sec. 1.  When a plaintiff sues under 42 U.S.C. Sec. 1983 based on a defendant's alleged failure to provide procedural process, courts engage in a two-step analysis: (1) "whether 'the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property';" and (2) if so, "whether 'the procedures available provided the plaintiff with due process of law.'"  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *see also Robb v. City of Philadelphia*, 733 F.2d 286 (3d Cir. 1984).

Defendant submits to the Court that Plaintiff has had adequate procedural due process protections through his post termination proceedings.  However, under N.J.S.A. 40A:14-181, every law enforcement agency in New Jersey must "adopt and implement guidelines that are consistent with the guidelines that have been promulgated by the Attorney General."  These guidelines pertain to the Internal Affairs and disciplinary processes. These guidelines require a fair and impartial investigation, among other protections. In this case, as Defendant noted in its statement of facts, Washington Township's rules and regulations were voided by order of the court for failing to be properly adopted. (Defendant's Ex. 9). The Order of the court declared the Rules and Regulations

18

void as they existed prior to the amendment on May 24, 2015.  As
a result, at the time of the administrative charges and
investigation leading to Plaintiff's disciplinary charges,
Washington Township had failed to comply with state law and lacked
procedural protection required under N.J.S.A. 40A:14-181.

In addition to the failure to provide the protections, the
Second Amended Complaint alleges that the Defendants purposely
worked in concert to deny Plaintiff a fair and impartial process.
Compliance with the rules and regulations guaranteeing a fair and
impartial process is mandated by state law and is clearly
established. N.J.S.A. 40A:14-181.

Notwithstanding the failure to have statutorily mandated
rules and regulations in place which afforded Plaintiff certain
protections in the internal affairs process, Muniz recognized that
the Internal Affairs process should be free from conflicts of
interests in August 2012.  Exhibit D. Following his disclosure of
his conflict of interest to Dalton, Dalton disclosed it to the New
Jersey State Attorney General for instruction.  Exhibit E.  The
State of New Jersey Attorney General issued specific instruction
to Dalton to handle the investigation and cautioned that the
process of the DUI trial would have a direct bearing on the IA
investigation. Exhibit E. Once assigned the investigation by the
attorney general's office, Plaintiff was entitled to have the
administrative process handled by Dalton's office, not Muniz. It

19

is clear that the admitted conflict of interest that Muniz had did not dissipate somehow following Plaintiff's acquittal. The protections which were to be afforded to plaintiff through both AG Guidelines and the specific instruction to Dalton were that the GCPO must handle the investigation and that the DUI matter should procced through the court process before the investigation into the officer's alleged misconduct could proceed. Exhibit E. In choosing to ignore the guidelines and instruction from the Attorney General, Muniz and Dalton violated procedural due protections guaranteed to Plaintiff.

This Court is bound by the analytical scheme set forth in *Robb v. City of Philadelphia*, 733 F.2d at 292, which requires (1) "whether the asserted individual interests are encompassed within the fourteenth amendment's protection of `life, liberty, or property'" and (2) if so, "we … must decide what procedures constitute 'due process of law.'" Clearly Plaintiff has a legitimate expectation of continued employment and to a fair and impartial investigation into alleged misconduct as required by state law and as set forth in the Attorney General Guidelines. As such Plaintiff had a property right. The second prong is whether the procedures available provided plaintiff with due process of law. Under the facts as set forth in the complaint, and regardless of the procedures available to Plaintiff under N.J.S.A. 40A:14-

147, Plaintiff was denied due process of law which guaranteed him a fair and impartial investigation.

In this case, the Attorney General Guidelines are the process to which Plaintiff was entitled, and as evidence of that Defendant consulted with the Attorney General which provided specific protections to Plaintiff in connection with the conflict of interest. Those protections required a fair and impartial investigation to be handled by Dalton, that Muniz be removed from the process and that the IA should be suspended until the charges against Moriarty were adjudicated. Defendants denied Plaintiff those protections. Exhibit F.

Additionally, Plaintiff was denied procedural due process because the public entity in this case failed to have procedural protections in place and failed to follow the instructions of the Attorney General -- these failures tainted the process and deprived Plaintiff of a fair and impartial investigation and thus resulted an unfair process. The tainted process permitted the municipal defendants to control the investigation, and the ultimate outcome and penalty.

Defendant notes that the matter of *Barnett* provides "some guidance" to the subject matter in arguing that Plaintiff was afforded ample process when he became the subject of Internal Affairs Investigations and an appeal of the Hearing Officer's decision. The *Barnett* case does not involve a claimed violation

of <u>N.J.S.A.</u> 40A:14-147 resulting in a procedural due process claim. In *Barnett*, the Court "agree[d] with the District Court that the two layers of review cure any procedural defect in the original pre-termination hearing." *Barnett*, 705 Fed.Appx. at 73.  It also held that "the most thorough and fair post-termination hearing cannot undo the denial of pre-termination procedures" … "[b]ut once some process is provided … de novo review can cure any claimed bias in *appropriate cases*." *Id*.  Nothing could cure the layers of bias in this case.  Muniz and the WTPD should have been conflicted out of the matter and removed from any participation in the administrative investigation.  The WTPD should have been precluded from proceeding with any investigation into alleged misconduct by Plaintiff.

## IV. PLAINTIFF'S EQUAL PROTECTION CLAIM (COUNT V) SHOULD NOT BE DISMISSED.

Plaintiff concedes that the class of one theory has been denounced by the Supreme Court in *Enquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 594 (2008).  Any fair reading of the claim set forth in paragraphs 120-127 of Plaintiff's Amended Complaint, clearly establishes that it is not pled as a class of one theory.  As Defendant notes in his motion, a class of one claim would include the following elements: that plaintiff was terminated from his position, not based on his membership in a particular class, but rather because plaintiff was singled out for

arbitrary, vindictive or malicious reasons. Plaintiff instead argues that he was in a class of officers who were involved with Moriarty's DUI but that he was treated less favorably than the other officers, Calvello and Fratelli, who failed to cooperate in the investigation and failed to issue timely reports of their involvement. They were later ordered to complete reports and complied. However, despite rule violations, neither of the other officers were investigated, charged or disciplined. Muniz failed to take any action against either officer. In fact, Officers Fratelli and Calvello were later promoted.   As such, Plaintiff was treated less favorably than other similarly situated persons. Persons are similarly situated when they are alike "in all relevant aspects," but need not be identical. *Startzell v. City of Philadelphia*, *Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008); *Simmermon v. Gabbianelli, 932 F.Supp.2d 626, 633 (D.N.J. 2013)*. Defendant contends that Plaintiff must show that he and the employees with whom he seeks to compare himself are similar in all of the relevant aspects (Defendant's brief 23-25).   In the Third Circuit, "a plaintiff need not show that the comparators are identical in all relevant aspects but rather that they share pertinent similarities". *Tucker Industrial Liquid Coatings, Inc. v. Borough of East Berlin*, 85 F.Supp.3d 803, 810 (M.D.Pa.2015) citing *Borrell v. Bloomsburg Univ.*, 955 F.Supp.2d 390, 405 (M.D. Pa.2013).   Determining whether a plaintiff and other individuals

23

share "pertinent similarities" is a "case-by-case fact-intensive inquiry." Id. The Court should apply the *Startzell* test (that persons are similarly situated when they are alike "in all relevant aspects"), *Startzell*, 533 F.3d at 203, and require comparators to be alike, but not identical. *Simmermon*, 932 F.Supp.2d at 633. "[A] general allegation that plaintiff has been treated differently from others similarly situated will suffice." *Tomino v, City of Bethlehem*, 2010 WL 1348536, at *14 (E.D.Pa. Mar. 31, 2010) citing *Phillips,* 515 F.3d at 244.

There is no rational basis for the difference in his treatment. See *Board of Trustees of University of Alabama V. Garrett*, 531 U.S. 356, 367 (2001). Defendants treated Plaintiff more harshly than his similarly situated peers by having Plaintiff investigated, charged and disciplined. Plaintiff contends that that the different treatment emanates from his conduct in arresting Muniz's political ally. Accordingly, Plaintiff's equal protection claim should not be dismissed. [1]

---

[1] Defendant argues that Plaintiff's attempt to rely on "comparator" officers to bolster his political retaliation claim is misplaced. Defendant's argument in this regard is misplaced. Count V is not intended to state a Class of One argument, as appears in its title which was inartfully drafted. A fair reading of the claim set forth in Count V/Equal Protection makes clear that it is an equal protection argument that plaintiff was treated less favorably than other similarly situated officers, not that plaintiff was treated as a class of one. Officer Lisa Fratelli and Officer Marty Calvello were similar in all relevant respects. Officers Fratelli and Calvello were fact witnesses to the Moriarty DUI allegations, however, they failed to cooperate in the investigation and failed to issue timely reports of their involvement. They were later ordered to complete reports and complied. However, despite rule violations, neither of the other officers were investigated, charged or disciplined. They were in fact

**CONCLUSION**

    For the foregoing reasons, Defendant's motion should be denied.


                                        THE VIGILANTE LAW FIRM, P.C.
                                        *Attorneys for Plaintiff,*
                                        *Joseph DiBuonaventura*

                                        By: /s/ Jacqueline M. Vigilante
                                        Jacqueline M. Vigilante, Esquire
Date:  December 3, 2018           Attorney I.D. #030961988
                                        99 North Main Street
                                        Mullica Hill, NJ 08062
                                        856-223-9990
                                        jacci@thevigilantelawfirm.com

---

later promoted. Plaintiff seeks leave to correct the title of Count V under the Court's liberal policy of granting leave to correct mistakes in pleading.

25