## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH DIBUONAVENTURA, | Civil Action No. 1:17-cv-05120 |
| Plaintiff, | ELECTRONICALLY FILED |
| v. | **Motion Date: December 17, 2018** |
| SEAN DALTON, RAFAEL MUNIZ, in their individual capacities | |
| Defendants. | |

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT SEAN DALTON'S MOTION TO DISMISS COUNTS II, IV AND V, AND, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO COUNT IV

ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
(856) 795-2121

Attorneys for Defendant Sean Dalton

By:   JOHN C. CONNELL, ESQUIRE
      LAURA LINK, ESQUIRE
      DANIEL J. DEFIGLIO, ESQUIRE

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

I.    INTRODUCTION ..................................................................1

II.   ARGUMENT..........................................................................2

     A.    The "Continuing Violations" Doctrine Does Not Salvage
          Plaintiff's Untimely Constitutional Claims. .......................................2

     B.    Plaintiff Has Failed to Demonstrate that His Claims Should
          Survive Application of the Collateral Estoppel Doctrine..................5

     C.    Plaintiff's Political Retaliation Claim Must Also Fail for Failure
          to State a Claim...................................................................7

     D.    Plaintiff's Equal Protection Claim Still Fails as a Matter of
          Law.....................................................................................9

     E.    Plaintiff's Due Process Claim Still Fails as a Matter of Law...........12

     F.    Plaintiff's Argument that Defendant Dalton is Not Entitled to
          Immunity Because He Was Not Acting in an Investigative or
          Administrative Capacity Is Without Merit. .....................................13

III.  CONCLUSION .....................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Carter v. City of Phila.*,
181 F.3d 339 (3d Cir. 1999)............................................................................13

*Couch v. Bd. of Trs. of the Mem. Hosp.*,
587 F.3d 1223 (10th Cir. 2009).........................................................................4

*Enquist v. Oregon Dep't of Agric.*,
553 U.S. 591 (2008)...............................................................................10, 11

*Fresh Prepared Foods, Inc. v. Farm Ridge Foods LLC*,
2013 U.S. Dist. LEXIS 128064 (D.N.J. Sept. 9, 2013)......................................6

*Kuerbitz v. Meisner*,
2017 U.S. Dist. LEXIS 152767 (E.D. Mich. Sept. 20, 2017)............................8

*Michaels v. New Jersey*,
50 F. Supp. 2d 353 (D.N.J. 1999)....................................................................13

*Myers v. County of Somerset.*
515 F. Supp. 2d 492 (D.N.J. 2007)....................................................................3

*O'Connor v. City of Newark*,
440 F.3d 125 (3d. 2006)...................................................................................3

*Parklane Hosiery Co, Inc. v. Shore*,
439 U.S. 322 (1979)...........................................................................................7

**State Cases**

*Bondi v. Citigroup, Inc.*,
423 N.J. Super. 377 (App. Div. 2011)...........................................................7, 9

*Gregory Management Corp. v. Wakefern Food Corp.*,
207 N.J. Super. 607 (Law Div. 1986)............................................................7, 9

*Lyons v. City of Camden*,
2018 WL 1056215 (N.J. Super. Ct. App. Div. Feb. 27, 2018)............................6

*Winters v. No. Hudson Regional Fire & Rescue*,
   212 N.J. 67 (2012) ..........................................................................5, 6

**State Statutes**

N.J.S.A. 40A:14-152.1 ...........................................................................8

**Constitutional Provisions**

First Amendment ............................................................3, 4, 8

## I.    INTRODUCTION

The lynchpin of Plaintiff's opposition to the present motion is his repeated insistence – without basis in law or fact – that Defendant Dalton was acting as Plaintiff's employer. This includes when Dalton oversaw the criminal investigation pertaining to Plaintiff's conduct, and when Dalton advised Chief Muniz of the Washington Township Police Department ("WTPD") that the criminal investigation and prosecution had ended so that the WTPD could proceed with its internal affairs investigation as it deemed fit. This gross misrepresentation is critical because it reveals why this Court, the parties, and the public continue to be unnecessarily burdened by Plaintiff with yet another baseless action regarding the lawful termination of his employment – given that ALL of Plaintiff's claims lodged against his true employer, the WTPD, have failed, Plaintiff is now asserting the same claims against a new target who he is desperately attempting to mischaracterize as an additional employer. Plaintiff's attempts to cast Defendant Dalton as his employer are patently absurd.

Additionally, Plaintiff's opposition has failed to adequately address a number of fatal flaws in Plaintiff's claims. As set forth in more detail below, (1) Plaintiff's reliance on the continuing violations doctrine to cure his untimely claims runs contrary to well-settled law, (2) Plaintiff's argument that the collateral estopped doctrine is inapplicable misstate the elements of the defense and

completely ignore the standards regarding same set forth by the New Jersey

Supreme Court, (3) Plaintiff has failed to demonstrate that he engaged in any

protected activity, (4) Plaintiff has failed to demonstrate that Defendant Dalton

engaged in any conduct that amounted to retaliatory action or a deprivation of

rights without due process, and (5) Plaintiff has failed to demonstrate that the

doctrine of qualified immunity does not operate to bar his claims against

Defendant Dalton.

Accordingly, for the reasons set forth in Defendant Dalton's moving brief as

well as those asserted herein, Defendant Dalton respectfully submits that Plaintiff's

claims against him should be dismissed in their entirety with prejudice.

## II.   ARGUMENT

### A.   The "Continuing Violations" Doctrine Does Not Salvage Plaintiff's Untimely Constitutional Claims.

Plaintiff argues that his claims are timely pursuant to the "continuing

violations" doctrine because he filed his claims against Defendant Dalton within

two years of Defendant Dalton advising the WTPD that the criminal investigation

and prosecution of Plaintiff had ended and therefore the WTPD could proceed with

its internal affairs investigation as it deemed fit. This argument is flawed for two

independent reasons.

First, Plaintiff's argument runs contrary to well-established law. The

"continuing violations" doctrine is appropriate for application in the context of a

hostile work environment claim where a plaintiff relies on the aggregation of many minor acts – no single one of which would give rise to a discrete claim – to support his claim. *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d. 2006). This doctrine cannot be applied to discrete acts; rather, claims based on discrete acts must be raised within the applicable limitations period or they will be barred. *Id.* Additionally, the Third Circuit has expressly ruled that the continuing violations doctrine does not apply in the context of First Amendment retaliation claims. *Id.* at 127 ("First Amendment retaliation claims are always individually actionable, even when relatively minor"); *see also Myers v. County of Somerset*. 515 F. Supp. 2d 492, 501 n.1 (D.N.J. 2007) ("First Amendment retaliation claims are not subject to the 'continuing violations' exception to the statute of limitations that is applicable to hostile work environment claims. A retaliatory act that infringes upon a plaintiff's First Amendment rights is a discrete act").

Here, Plaintiff's claims against Defendant Dalton are not based on the cumulative effect of several minor acts as necessary for application of the continuing violations doctrine; rather, they rest entirely on Defendant Dalton's supervision of the criminal investigation of Plaintiff – which is a discrete set of actions that occurred in 2012 and culminated in Plaintiff's criminal indictment in 2013 – well more than two years prior to the initiation of this lawsuit. This alone,

-3-

along with the Third Circuit's express direction regarding First Amendment retaliation claims, mandates dismissal of those claims.

Second, and relatedly, the only act which could hypothetically "toll" Plaintiff's claims – Dalton's act of advising Chief Muniz that the GCPO had concluded its criminal investigation and prosecution and that the WTPD could thus proceed with its own internal affairs investigation as it deemed fit – does not rise to the level of a constitutional violation. As discussed more fully in Defendant Dalton's moving brief, the mere act of "turning over" the investigation to Defendant Muniz and the WTPD after the criminal matter was concluded – a fact Plaintiff admits is expressly mandated by the Attorney General's Guidelines (*see* Plaintiff's Brief in Opposition ("Pb") at pages 8-9) – is not a retaliatory act recognized by any court.[1] *Cf. Couch v. Bd. of Trs. of the Mem. Hosp.*, 587 F.3d 1223, 1243 (10th Cir. 2009) (stating, in the context of a First Amendment retaliation claim that "[a]n investigation of potential misconduct ... will generally

---

[1] When viewed through this lens, the oddly circular nature of Plaintiff's theory of liability against Defendant Dalton further highlights how this matter is but another panicked attempt to shift blame. On one hand, Plaintiff appears to argue that, if Dalton had handled the investigation, he would have had a fair process. (Pb30) ("Plaintiff was entitled to have the administrative process handled by Defendant Dalton's office and not by Defendant Muniz"). On the other hand, though, Plaintiff also argues that Dalton is liable because Dalton was part of a political scheme and "worked in concert to deny Plaintiff a fair and impartial process." (Pb29).

not constitute an adverse employment action"). Plaintiff's claims are thus completely time-barred and must be dismissed.

**B.    Plaintiff Has Failed to Demonstrate that His Claims Should Survive Application of the Collateral Estoppel Doctrine.**

Even assuming Plaintiff's claims are not time-barred, Plaintiff's opposition papers readily concede that the present matter arises "**from the same core set of facts**" (Pb2) as the other matters in the Appellate Division, and that Plaintiff's arguments in those matters detailed "that something more was at work in the underlying charges against Plaintiff." (Pb16). Nonetheless, Plaintiff claims that the doctrine of collateral estoppel should not operate to bar the present claim which has already been thrice litigated in multiple fora. For the following reasons, Plaintiff's opposition in this regard should be rejected.

First, Plaintiff claims that the issue of political retaliation is not "identical" to the issues litigated in the prior matters, that it was not "actually litigated," and that it was not "essential" to the prior decisions because "Dalton can point only to *one statement* within Plaintiff's opening statement of the administrative hearing to argue that he should be precluded from litigating his political retaliation claim." This argument misses the mark for two reasons. As an initial matter, it ignores the fact that New Jersey law is clear that the issue need only be "raised" – not fully litigated – in order to be precluded by the collateral estoppel doctrine. *Winters v. No. Hudson Regional Fire & Rescue*, 212 N.J. 67, 71-74 (2012). Moreover, it

ignores the fact that Defendant Dalton pointed to multiple statements – not just one – in which Plaintiff's counsel did raise the issue during the course of the multiple state court litigations that Plaintiff pursued prior to this one related to same core set of facts.[2] It was the raising of the issue that led the Superior Court of New Jersey to specifically find that Plaintiff had raised political retaliation in the CEPA matter such that he should be foreclosed from re-litigating the same issue again.[3]

Second, Plaintiff's claims that Defendant Dalton cannot avail himself of the protections of the collateral estoppel doctrine because **Dalton** was not a named party to the previous actions is false. The element plaintiff refers to (element 5) requires that "**the party against whom the doctrine is asserted** was a party to or in privity with a party to the earlier proceeding." *Winters*, 212 N.J. at 85. Defendant Dalton is asserting collateral estoppel against Plaintiff; not the other way around.

---

[2] Plaintiff appears to argue that, because many of the most blatant examples of Plaintiff "raising" political retaliation in the administrative hearings were *argument* of counsel, that he is somehow absolved of the effects of collateral estoppel. This is simply not supported by the law. *See, e.g., Lyons v. City of Camden*, 2018 WL 1056215, at *4 (N.J.Super.Ct., App.Div., Feb. 27, 2018) (stating that, among other things, "[t]he issue of his disability was raised by counsel before, during, and after the hearing" and dismissing Plaintiff's complaint on collateral estoppel grounds). As an aside, Plaintiff's counsel represented the plaintiff in the *Lyons* matter.

[3] It should be noted that Plaintiff's argument that the issue of political retaliation was not essential to the prior decision is the same argument that was raised by Justice Albin in his dissenting opinion in *Winters* and that was expressly rejected by the majority. *See Winters*, 212 N.J. at 90 n. 6, 97.

-6-

Plaintiff's argument thus fails. Moreover, principles of non-mutual *defensive* collateral estoppel are well established in this Circuit and beyond. *See Fresh Prepared Foods, Inc. v. Farm Ridge Foods LLC*, 2013 U.S. Dist. LEXIS 128064, *17-18 (D.N.J. Sept. 9, 2013) (recognizing both defensive and offensive non-mutual issue preclusion and stating merely that "the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action" (*citing Parklane Hosiery Co, Inc. v. Shore*, 439 U.S. 322 (1979)).[4]

For these reasons, as well as those submitted in Defendant Dalton's initial moving papers, Plaintiff's claims should be precluded pursuant to the collateral estoppel doctrine.

### C.    Plaintiff's Political Retaliation Claim Must Also Fail for Failure to State a Claim.

There continue to be two glaring deficiencies in Plaintiff's Political Retaliation claim. First, Plaintiff has failed to plead that *Defendant Dalton* subjected Plaintiff to any adverse employment action. Plaintiff's groundless assertion that Defendant Dalton was "acting as [his] employer in taking over the investigation" is not enough. Defendant Dalton was never Plaintiff's employer and

---

[4] Plaintiff also argues that collateral estoppel is unavailable because the other matters are pending on appeal. This does not change the analysis. *See Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 426 (App. Div. 2011) (*citing Gregory Management Corp. v. Wakefern Food Corp.*, 207 N.J. Super. 607, 624 (Law Div. 1986) (holding that "res judicata and collateral estoppel should be applied even if the final judgment in the prior action is pending on appeal")).

was not involved in the decision to terminate Plaintiff's employment. To be sure, Defendant Dalton was ultimately responsible for a **criminal investigation** into Plaintiff's conduct. However, it is undisputed that the investigation did not itself lead to any adverse employment action. Plaintiff has not pled otherwise (nor could he). Thus, Plaintiff's claims are not properly asserted against Defendant Dalton; rather they are claims which can only be asserted against his employer, the WTPD.

Second, Plaintiff has failed to plead facts sufficient to show that he engaged in any protected activity. While Plaintiff claims that he was politically independent of Moriarty, he does not claim that he took any action to demonstrate such independence other than arresting him. Plaintiff has not claimed that he arrested Moriarty for political reasons; rather, he has maintained that he did so in the course of duties.[5] *See* N.J.S.A. 40A:14-152.1 ("[A]ny full-time, permanently appointed municipal police officer shall have full power of arrest for any crime committed in said officer's presence and committed anywhere within the territorial limits of the State of New Jersey"); *cf. Kuerbitz v. Meisner*, 2017 U.S. Dist. LEXIS 152767, *15 (E.D.Mich. Sept. 20, 2017) (dismissing, in part, plaintiff's First Amendment claim because plaintiff's conduct of arresting certain public officials at a

---

[5] This is not surprising, as it certainly is not proper for police officers to make arrests for political reasons. If that argument were taken to its logical conclusion, mayhem could result. Police officers could arrest anyone they like for political reasons and then claim insulation from discipline pursuant to the theory asserted by Plaintiff here – this is certainly not the spirit, intent, or reality of the law.

foreclosure auction would not have conveyed any message to unknowing participants aside from "violence, force and confusion"). He cannot therefore establish any "protected activity" and his claim must fail.

### D. Plaintiff's Equal Protection Claim Still Fails as a Matter of Law.

Plaintiff's opposition papers argue that the Equal Protection Class of One claim set forth in Count V of the Second Amended Complaint should survive dismissal because (1) there has been no final judgment issued in Plaintiff's administrative appeal, (2) the claim is not a class of one claim, and (3) Defendant Dalton was indirectly responsible for the disparate treatment suffered by the other officers involved in the Moriarty arrest – Calvello and Fratelli – because "Defendant Muniz and the WTPD were precluded from the investigation involving Moriarty and his complaints about his arrest." For the reasons set forth below, none of these arguments are sufficient to save Plaintiff's claim.

First, Plaintiff's Equal Protection claim should be dismissed pursuant to the doctrine of collateral estoppel for the same reasons as noted above and in Defendant Dalton's initial brief. Plaintiff opposes this argument by attempting to distinguish this case from the very similar *Zahl* case cited in Defendant Dalton's initial brief by arguing, "Unlike *Zahl*, there has been no final judgment issued in Plaintiff's administrative appeal." (Pb25). But the fact that Plaintiff has appealed the final judgment that was rendered against him does not mean that the judgment

is not a final one. *See Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 426 (App. Div. 2011) (*citing Gregory Management Corp. v. Wakefern Food Corp.,* 207 N.J. Super. 607, 624 (Law Div. 1986)).

Second, Plaintiff's claim that his Equal Protection claim is not based on a class of one theory is bogus. Count V of Plaintiff's Second Amended Complaint is titled "Equal Protection **Class of One**" (emphasis added). After being confronted with the fact that the United States Supreme Court has denounced such theories, Plaintiff now claims that "any fair reading of the claim … clearly establishes that it is not pled as a class of one theory" and suggests that the title was simply "inartfully drafted." Plaintiff's last ditch attempts to re-title this claim are futile because, regardless of what Plaintiff now calls it, his claim *is* based on a class of one theory and is barred by the Supreme Court ruling in *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008).

To that end, Plaintiff has not set forth any argument that he was treated differently due to his membership in any particular class. Rather, Plaintiff oddly argues the opposite. Specifically, Plaintiff now claims that he was a member of a class – a class of three officers who were involved in the Moriarty arrest – but then turns around and claims that he was the only member of this so-called class of three who was singled out and treated less favorably than the other class members. This argument is nonsensical, as Plaintiff is arguing on one hand that he is in a

-10-

class but then arguing on the other hand that he is removed from that very class because he suffered less favorable treatment than the other class members.[6] In doing so, Plaintiff has dealt a fatal blow to his own claim, as that is precisely the type of claim that the *Enquist* Court struck down. *Enquist*, 553 U.S. at 605 ("[W]e have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner").

Finally, Plaintiff's argument that Defendant Dalton is somehow responsible for the allegedly "favorable" treatment that Calvello and Fratelli enjoyed should be rejected outright for several reasons. Plaintiff has not pled and cannot plead that Defendant Dalton was ever the employer of Calvello or Fratelli. He has pled no facts suggesting that Dalton had anything to do with the WTPD's decision to discipline them or to promote them. These types of decisions were not in Defendant Dalton's sphere, as he is not a member of the WTPD and never served

---

[6] Plaintiff's argument devolves into the claim that he was in a class of one within a class of three. Plaintiff could just the same argue that he was in a class of all of the police officers in Washington Township, or all New Jersey residents, or all humans, and it would be akin to his argument now. Plaintiff's true claim is just that he was treated unfairly, not that he was treated unfairly **based on** his status as a protected class member. Plaintiff's new efforts to recast his claim are simply an attempt to end run around the ruling of United States Supreme Court in *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008). Plaintiff's attempts to do so should be denied.

as the employer of Calvello, Fratelli, or Plaintiff. Again, Plaintiff has not alleged any facts which would plausibly support any claim to the contrary.

For all of the foregoing reasons, as well as those set forth in Defendant Dalton's initial brief, Plaintiff's Equal Protection claim should be dismissed.

### E.   Plaintiff's Due Process Claim Still Fails as a Matter of Law.

Plaintiff's silence on the actual nature of the post-termination procedures afforded to him speaks louder than the argument he actually puts forward. Essentially, Plaintiff argues that the decision which voided Washington Township's Rules and Regulations constitutes *per se* evidence that he was not afforded due process – Plaintiff has cited no law supporting this over-reaching position. The fact that the Rules and Regulations were voided does not magically dissipate the extensive process that was afforded to Plaintiff and that continues to be afforded to Plaintiff. Plaintiff has participated in extensive administrative hearings before the Honorable Barnett E. Hoffman, J.S.C. (ret.), during which he was represented by counsel and had a full opportunity to call and cross-examine witnesses as desired and then took advantage of the opportunity for a *de novo* review in the New Jersey Superior Court that was overseen by a second independent fact-finder, the Honorable David Morgan, J.S.C. Even now, Plaintiff continues to afford himself of more than adequate process, as he is continuing to challenge his termination via two pending appeals that he has filed with the

Appellate Division. This process is certainly adequate and Plaintiff has cited no law which would require more.

### F. Plaintiff's Argument that Defendant Dalton is Not Entitled to Immunity Because He Was Not Acting in an Investigative or Administrative Capacity Is Without Merit.

Plaintiff's efforts to skirt around the valid Third Circuit law cited in Defendant Dalton's initial moving papers, which dictate that actions taken by prosecutors in an administrative or investigative capacity are entitled to protection under the qualified immunity doctrine, must fail. *See Carter v. City of Phila.*, 181 F.3d 339, 356 (3d Cir. 1999) (prosecutors are protected by qualified immunity for all actions taken in an "investigative or administrative capacity" (internal quotation marks omitted)); *see also Michaels v. New Jersey*, 50 F.Supp.2d 353, 362 (D.N.J. 1999). Without any legal support, Plaintiff summarily claims that Defendant Dalton was not acting in such an investigative or administrative capacity; rather, Plaintiff claims, Defendant Dalton was acting "in a supervisor manner in taking over the Internal Affairs investigation for Defendant Muniz and was acting as the employer in taking over the investigation." There is no reasonable argument that Defendant Dalton was acting in anything but an investigative capacity when he was overseeing the criminal investigation of which Plaintiff was the target. Plaintiff has pointed to no legal authority which would support any contrary position nor has Plaintiff pointed to any source supporting the claim that Defendant

-13-

Dalton somehow became Plaintiff's employer by virtue of supervising this criminal investigation. These arguments are baseless and constitute nothing but a self-serving attempt to avoid application of the qualified immunity doctrine – the application of which is in fact appropriate in this context per the valid Third Circuit law cited above.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant Sean Dalton respectfully requests that this Court grant his Motion to Dismiss Counts II, IV and V and, in the Alternative, for Summary Judgment as to Count IV, dismissing Plaintiff's Second Amended Complaint in its entirety with prejudice.

Respectfully submitted,
ARCHER & GREINER
A Professional Corporation
Attorneys for Defendant Sean Dalton

By: /s/ *Laura Link, Esquire*
John C. Connell, Esquire
Laura Link, Esquire
Dated: December 10, 2018            Daniel J. DeFiglio, Esquire

215600067v2

-14-