UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH DIBUONAVENTURA, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 17-cv-5120 |
| v. | : | OPINION |
| SEAN F. DALTON and RAFAEL MUNIZ, | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motions [Docs. 54 & 58] to dismiss the Second Amended Complaint. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants' motions will be granted.

## Background

This civil rights case stems from the termination of Plaintiff's employment as a police officer for the Washington Township Police Department ("WTPD"). Defendant Rafael Muniz, at all relevant times, was Chief of Police for WTPD, which is located in Gloucester County New Jersey. Defendant Sean F. Dalton served as Prosecutor for Gloucester County during all times relevant to this matter.

Plaintiff alleges that on or about June 5, 2012, he complained to Defendant Dalton that WTPD was unable to locate a police report that was the subject of an OPRA request; the report concerned the alleged theft of over $6,000 of jewelry by Defendant Muniz's son. Dalton allegedly authorized an investigation into the missing report, and the report was located. On or about June 21, 2012, Plaintiff complained to the Washington Township Business Administrator that Muniz had engaged in misconduct by failing to refer his son's case to the Prosecutor's Office for investigation. Plaintiff asserts that the complaint was communicated to Dalton, who allegedly took no action. Plaintiff states that he filed a complaint with the Prosecutor's Office on or about August 6, 2012 regarding Muniz's alleged mishandling of the matter involving his son.

On July 31, 2012, after a traffic stop, Plaintiff arrested Paul Moriarty for DUI and refusal to submit to a breathalyzer. Moriarty was previously Mayor of Washington Township and at the time of his arrest was a State Assemblyman. While Mayor, Moriarty had promoted Defendant Muniz from Lieutenant to Chief of Police. Plaintiff complains that, despite a conflict of interest, Muniz was involved in the investigation prompted by Moriarty's August 11, 2012 complaint with WTPD as to whether Plaintiff's actions on July 31, 2012 constituted misconduct.

Muniz's involvement in the Moriarty complaint continued until on or about August 13, 2012 when Muniz submitted a conflict letter to the Prosecutor's Office, requesting that the Prosecutor's Office assume responsibility for the investigation. After consulting with the New Jersey Attorney General for guidance, on September 5, 2012, Dalton informed Muniz that the Prosecutor's Office would handle the internal affairs investigation regarding Moriarty's complaint. On or about October 17, 2012, Dalton issued findings regarding the internal affairs investigation prompted by Plaintiff's complaint; he concluded that Muniz did not engage in misconduct regarding the criminal investigation involving his son.

Instead, the internal affairs investigation into Plaintiff regarding the Moriarty arrest was converted to a criminal investigation. On November 9, 2012, Plaintiff was served with thirteen criminal charges relating to the manner in which he conducted the Moriarty arrest as well as false information contained in the investigation report regrading the Moriarty stop. Approximately two weeks later, Plaintiff was suspended without pay. According to the Second Amended Complaint, on or about November 26, 2012, Muniz informed Dalton of another internal affairs investigation of Plaintiff in which the complaining witness was the brother of a WTPD Captain; this is referred to as the "warnings case."

3

On May 1, 2013, Plaintiff was indicted on the criminal charges filed by Moriarty and all charges against Moriarty were dismissed by the Prosecutor's Office.

On or about October 15, 2013, Plaintiff filed a complaint in the Superior Court of New Jersey against Washington Township, Washington Township Administrator Robert Smith, and Muniz alleging claims under the New Jersey Constitution and Conscientious Employee Protection Act ("CEPA") related to Plaintiff's July 31, 2012 traffic stop of Moriarty. Specifically, Plaintiff alleged that his State constitutional rights were violated in that Muniz assisted Moriarty in crafting the criminal complaint against Plaintiff. Summary judgment was granted in favor of Muniz and was affirmed on appeal by the Superior Court of New Jersey, Appellate Division.

On March 3, 2015, Plaintiff was acquitted of all criminal charges stemming from the Moriarty complaint. Accordingly, on March 6, 2015, Dalton advised Muniz that the Prosecutor's Office had concluded its criminal investigation and prosecution of Plaintiff, and WTPD could proceed with its own internal affairs investigation as it deemed

appropriate.[1] Plaintiff ultimately was charged with violating N.J. Stat. Ann. § 40A:14-147 and found guilty of misconduct by a hearing officer, resulting in his termination from WTPD.

Plaintiff filed this federal court action against Defendants Dalton and Muniz on March 3, 2017. Three claims remain in Plaintiff's Second Amended Complaint before this Court: (i) violation of Plaintiff's First Amendment right to be free from political retaliation in that the manner in which Plaintiff was treated and his internal affairs charges were handled by Defendants was politically motivated; (ii) denial of procedural due process in that Defendants failed to have procedural protections required by State statute, Defendants "schemed" to charge Plaintiff before the adjudication of Moriarty's DUI and refusal charges, and Defendants proceeded with their investigation without protecting Plaintiff from conflicts of interest presented by Muniz's involvement in the administrative investigation and discipline process; and (iii) Dalton's violation of Plaintiff's right to equal protection in that Plaintiff was treated differently from others similarly

---

[1] On or about March 23, 2015, Plaintiff filed a verified complaint for declaratory relief in the Superior Court of New Jersey against Washington Township, seeking the intercession of the Court with respect to the pending internal affairs investigation and anticipated discipline of Plaintiff emanating from the Moriarty traffic stop. The Superior Court determined that Washington Township could proceed with its investigation as long as a certain investigator was not involved.

situated in the internal affairs and administrative process because Dalton allowed Muniz to participate.

## Standard on Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Discussion

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. *See Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Baker*, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."

7

*Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989).

The First Amendment protects politically neutral or apolitical government employees from political patronage discrimination. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 276 (3d Cir. 2007). To state a *prima facie* claim of discrimination based on political patronage in violation of the First Amendment, a plaintiff must allege that: (1) he was employed at a public agency in a position that does not require political affiliation; (2) he was engaged in constitutionally protected conduct; and (3) this conduct was a substantial or motivating factor in the government's employment decision. *Id.* at 271.

Plaintiff asserts that "[t]he First Amendment conduct at issue . . . is Plaintiff's political independence from Moriarty and the political machine." (Pl. Br. at [62], p. 16.) He argues that the manner in which he was treated

8

and the way his internal affairs charges were handled by Defendants was politically motivated in violation of Plaintiff's First Amendment rights.

As an initial matter, the Court notes that the two-year statute of limitations for section 1983 actions prevents consideration of any of Defendants' conduct prior to March 3, 2015, which is two years before the original Complaint in this matter was filed in Superior Court of New Jersey. *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006). The continuing violations doctrine does not apply in the context of First Amendment retaliation claims. *Id.* at 127 ("First Amendment retaliation claims are always individually actionable, even when relatively minor"); *see also Myers v. County of Somerset*, 515 F. Supp. 2d 492, 501 n.1 (D.N.J. 2007) ("First Amendment retaliation claims are not subject to the 'continuing violations' exception to the statute of limitations that is applicable to hostile work environment claims. A retaliatory act that infringes upon a plaintiff's First Amendment rights is a discrete act.").

Additionally, the prior judicial determination of Plaintiff's misconduct precludes his claims that he was terminated due to protected activity.

Finally, but most importantly, New Jersey's Entire Controversy Doctrine bars the civil rights claims Plaintiff seeks to assert in this

litigation. The Entire Controversy Doctrine, "which does not require commonality of issues, precludes a party from later bringing claims that could have been joined in the earlier action," particularly when those claims "arise from related facts or the same transaction or series of transactions." *Zahl v. Warhaftig,* 655 F. App'x 66, 76 (3d Cir. 2016) (internal quotes and citations omitted); *see Opdycke v. Stout,* 233 F. App'x 125, 129 n.6 (3d Cir. 2007) (setting forth the broad reach that the Entire Controversy Doctrine has upon subsequent litigation).

> The entire controversy doctrine "seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible." *Thornton v. Potamkin Chevrolet,* 94 N.J. 1, 5, 462 A.2d 133 (1983) (quoting *Alfone v. Sarno,* 87 N.J. 99, 113, 432 A.2d 857 (1981) (internal quotation marks omitted) ). The doctrine serves "to encourage complete and final dispositions through the avoidance of piecemeal decisions and to promote judicial efficiency and the reduction of delay." *Wadeer v. N.J. Mfrs. Ins. Co.,* 220 N.J. 591, 610, 110 A.3d 19 (2015). If a party fails to assert a claim that the entire controversy doctrine requires to be joined in a given action, a court may bar that claim. R. 4:30A; R. 4:7-1.

*Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.,* 203 A.3d 133, 137 (N. J. 2019). A party will be precluded from relitigating its claims if three fundamental elements are met: "(1) the final judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction

or occurrence as the claim in the earlier one." *Balthazar v. Atl. City Med. Ctr.,* 137 F. App'x 482, 489 (3d Cir. 2005) (citing *McNeil v. Legislative Apportionment Comm'n,* 828 A.2d 840, 859 (N.J. 2003); *Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 591 A.2d 592, 599 (N.J. 1991)).

The political retaliation claim asserted in the Second Amended Complaint stems from the same transactions and occurrences related to Plaintiff's July 31, 2012 traffic stop of Moriarty as those pled in the Second Amended CEPA Complaint in the Superior Court of New Jersey. Specifically, in that case Plaintiff alleged that his State constitutional rights were violated in that Muniz assisted Moriarty, who was politically connected, in crafting the criminal complaint against Plaintiff that resulted in disciplinary charges and termination, in retaliation for Plaintiff arresting Moriarty. There, summary judgment was granted in favor of Muniz and Washington Township, and Plaintiff's Complaint was dismissed with prejudice. The Honorable Samuel J. Ragonese, J.S.C., found that Plaintiff had already been given an opportunity to fully and fairly litigate the circumstances surrounding his termination and was thus barred from doing so under the guise of a CEPA claim.

Similarly, Plaintiff's claim of denial of procedural due process in that Defendants failed to have procedural protections required by State statute,

Defendants "schemed" to charge Plaintiff before the adjudication of Moriarty's DUI and refusal charges, and Defendants proceeded with their investigation without protecting Plaintiff from conflicts of interest presented by Muniz's involvement in the administrative investigation and discipline process has been fully and fairly adjudicated. As has any claim that Plaintiff was treated differently from others similarly situated in the internal affairs and administrative process because Dalton allowed Muniz to participate been fully and fairly adjudicated.

Plaintiff's Hearing Officer, the Honorable Barnett E. Hoffman, J.S.C. (ret.), upheld Plaintiff's termination based on a finding that Plaintiff had engaged in multiple instances of misconduct under N.J. Stat. Ann. § 40A:14-147. Plaintiff appealed the administrative decision to the New Jersey Superior Court, Law Division. Upon *de novo* review, the Honorable David W. Morgan, J.S.C., affirmed Judge Hoffman's Order finding misconduct and terminating Plaintiff's employment as a WTPD police officer as appropriate discipline.

On March 25, 2019, the New Jersey Superior Court, Appellate Division in a *per curiam* opinion affirmed the decisions of Judges Ragonese and Morgan. *See DiBuonaventura v. Washington Twp.*, No. A-2212-17T3, 2019 WL 1349860 (N.J. Super. Ct. App. Div. Mar. 25, 2019).

## Conclusion

For these reasons, Defendants' motions [Docs. 54 & 58] to dismiss

the Second Amended Complaint will be granted. An appropriate Order will

be issued this date.

Dated: June 3rd, 2019

JOSEPH H. RODRIGUEZ
United States District Judge